**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SOMA GETTY PRIDDLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEAN MALANIS and GREAT LAKES )<br>SERVICE II, INC. )<br>)<br>Defendants. ) | No. 12 C 5831<br><br>Judge John A. Nordberg |

AND

| | |
|---|---|
| SOMA GETTY PRIDDLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DARWIN ASSET MANAGEMENT, )<br>THOMAS DRIVE PARTNERSHIP, and )<br>owner of record of 705-715 THOMAS )<br>DRIVE, BENSENVILLE, ILLINOIS )<br>)<br>Defendants. ) | No. 12 C 5833<br><br>Judge John A. Nordberg |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Soma Getty Priddle, proceeding *pro se*, filed two lawsuits in this Court on the same day. Both arise out of a flash flood that swept plaintiff's pickup truck from a parking lot into onrushing flood waters. Defendants in both cases have filed motions to dismiss arguing there is no federal jurisdiction.[1]

---

[1]Case number 12-5831 was assigned to this court. Case number 12-5833 was initially assigned to Judge Kendall, but was later reassigned to this court as a related case under Local Rule 40.4.

The following facts are taken from plaintiff's complaints. At approximately 5:30 a.m. on the morning of July 24, 2010, plaintiff drove to a private parking lot near O'Hare Airport. She is a pilot and was scheduled to work on a United Airlines flight departing later that day. A flash flood swept her pickup truck into "a fast moving body of water, some kind of drainage ditch." (12-5833 Dkt. # 1 at 2.) Plaintiff "narrowly escaped with her life . . . by breaking an internal steel safety barrier, crawling out of the manual rear window, jumping from the truck which was pulled away from her in the fast-moving water, clinging to a tree for safety, and being helped up the bank by two volunteers."[2] (*Id.*) Plaintiff alleges that 12 guard rail posts bordering the parking lot were missing or broken; if they had been in place, she believes that her truck would not been swept out and then submerged in the water. *Id.* at 3. In case number 12-5833, plaintiff is suing the owners of the parking lot (hereinafter, the "parking lot defendants").

Plaintiff alleges that her truck became "almost completely submerged" in the flood waters. (12-5831 Dkt. # 1 at 2.) Although plaintiff was able to escape, she "was unable to bring her flight bag, purse, and airline security items, all of which were strapped into place by the seat belt." (*Id.*) The personal items include information, such as flight plans, designated by the Department of Homeland Security as "Security Sensitive Information" or "SSI." Plaintiff asserts that the items were strapped down in such a way, and the truck windows were closed in such a way, that the contents would not have floated out while the truck was submerged, nor presumably would they have been damaged by water leaking into the interior of the truck.

That same morning, plaintiff contacted her airline which brought help and equipment to try to retrieve her personal items. They were unsuccessful. She also contacted the Bensenville police who told her to wait 24 hours before trying to get her truck towed. The next morning, Sunday June 25th, plaintiff came back and found that her truck was gone. She reported it stolen to the Bensenville police who told her that the truck was in the possession of Dino Malanis, owner of Great Lakes Service II. (*Id.*)

On Monday, July 26th, plaintiff went to Great Lakes Service in Addison to retrieve her truck. Malanis refused to release it unless she paid $2,400 in cash or by wire transfer funds. When plaintiff looked inside her truck, she noticed that the "contents were missing, including her briefcase, purse, flight bag, and suitcase." (*Id.* at 3.) Malanis claimed not to know where the items were. Eventually plaintiff got her truck back and then noticed that the "internal contents were further damaged." (*Id.*) In case number 12-5831, plaintiff is suing Malanis and his company (hereinafter, the "tow defendants") and accuses them of stealing her personal items.

Both sets of defendants have filed motions to dismiss arguing (among other things) that these lawsuits should be dismissed under Fed. R. Civ. Pro. 12(b)(1) because there is no basis for federal jurisdiction. Plaintiff argues that there is both federal question and diversity jurisdiction.

---

[2]Plaintiff has not alleged that she suffered any physical injuries.

**I.     Federal Question Jurisdiction.**

In her original complaints, plaintiff asserted only state law statutory claims seeking to recover for the damage to her truck, the lost personal items, and the payment of improper towing fees. Later, after defendants filed their motions to dismiss, arguing among other things that plaintiff's claims do not arise under or involve a substantial question of law, she filed an amended complaint (only in the case against the parking lot defendants) in which she added a claim for interference with her duties to protect Security Sensitive Information or SSI. (5833 Dkt. # 27 at 9.) This claim is based on a federal aviation regulation – 49 C.F.R. 1520 – that seeks to safeguard information deemed by the Transportation Security Administration to be important to public transportation. 49 C.F.R. § 1520.5. Section 1520.9(a)(1) states that a "covered person" (which includes pilots such as plaintiff, among many others) must take "reasonable steps to safeguard SSI in that person's possession or control from unauthorized disclosure." Plaintiff alleges that the tow company stole her personal items, which contained SSI, and that she has a duty under Section 1520 to retrieve those items. This is one reason she filed these lawsuits. Plaintiff is seeking a declaratory judgment "confirming her duties" under Section 1520, as well as an injunction to "assist her in fulfilling her federally mandated duty to comply" with Section 1520. (5833 Dkt. # 27 at ¶¶ 32-33.) She states that if she can recover her stolen personal items from the tow defendants, then she would be able to "mitigat[e] the risk to herself [and to] other airline crew and passengers and national security which is created by the threat of SSI being in the possession of non-authorized personnel." *Id.* at ¶ 35.[3]

The defendants argue that Section 1520 does not create an implied private right of action giving plaintiff the right to sue third parties who may be in possession of SSI. We agree. Plaintiff has cited to no cases, nor pointed to any textual basis, which would even remotely support such a right. We have found no cases suggesting that Congress meant to allow those possessing SSI to file individual lawsuits against third parties. *See generally Watts v. Advocate Health Care Network*, 2005 WL 4746951, *1 (N.D. Ill. Mar. 30, 2005) ("Under Seventh Circuit law, there is a strong presumption against implied private rights of action, and to overcome it, the court must find something in a statute's language, structure or history to indicate Congressional intent to authorize private enforcement.").

Plaintiff notes that Section 1520 imposes a duty on her to take "reasonable steps" to protect SSI. Neither section 1520 nor any case law, insofar as we can tell, spells out what steps must be taken to comply with this duty. As an initial matter, if the facts as alleged by plaintiff are true, it is hard to see how plaintiff's actions would be considered unreasonable. The SSI in her possession was lost only because there was a sudden flash flood or because defendants stole her personal items. She immediately contacted United Airlines as well as the local police. She promptly tried to recover the items.

---

[3]Logically, her interference claim under Section 1520 would only apply to the tow company defendants who are accused of stealing the personal items containing SSI. However, for some reason, plaintiff has asserted this claim only against the parking lot defendants.

Section 1520 does impose one specific duty. It requires that any covered person who "becomes aware that SSI has been released to unauthorized persons" must "promptly inform TSA or the applicable DOT or DHS component or agency." 49 C.F.R. § 1520.9(c). It is not clear whether plaintiff complied with this duty. However, whether she did or not does not matter because her ability to comply with this duty could not have been affected by any of the alleged actions of these defendants. More broadly, this duty to report suggests that TSA wanted to take the lead in deciding how to handle any unauthorized disclosures, which further counsels against finding an implied right of action.

Plaintiff seems to be worried that she will one day be accused of violating her duty to protect SSI. But she has not alleged that she faces any current or imminent threat. She has not alleged that TSA or any government agency, or either any airline or employer, has ever accused her of not protecting SSI, and it has been several years since this incident took place. On a related point, we note that plaintiff claims that an injunction is needed because of the risks to passengers and crew if her SSI has fallen into unauthorized hands. If she was worried about this possibility, then why did she wait two years before filing this lawsuit? In sum, for all the above reasons, we find that there is no basis for federal question jurisdiction.

## II. Diversity Jurisdiction.

We next consider whether plaintiff can establish diversity jurisdiction under 28 U.S.C. § 1332(a)(1). She alleges that she is a citizen of Wisconsin and that defendants are citizens of, or doing business or incorporated in, Illinois. At issue is whether plaintiff can meet the $75,000 amount-in-controversy requirement.

If the plaintiff's good-faith estimate of the amount in controversy is uncontested, the court will accept it "unless it appears to a legal certainty that the recovery will be less than the jurisdictional amount." *Tremback v. MONY Life Ins. Co.*, 2013 WL 1849517, *2 (N.D. Ill. May 1, 2013) (*citing McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009).) If, as is the case here, the defendants contest the jurisdictional allegations, then plaintiff must prove these allegations by a preponderance of evidence. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Plaintiff must do more than "point to the theoretical availability of certain categories of damages." *Am. Bankers Life Assur. of Florida v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003). Plaintiff must instead support her jurisdictional assertions with "competent proof." *McMillian*, 567 F.3d at 844.

Plaintiff is asserting claims against multiple defendants in these two lawsuits. This raises a question, which the parties did not address in their briefs, whether plaintiff may aggregate her claims to reach the $75,000 threshold. She seems to proceed on the assumption that she can. However, the general rule is that "the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy." *Travelers Property Casualty v. Good*, 689 F.3d 714, 717 (7th Cir. 2012). This applies specifically to claims "brought by a single plaintiff against multiple defendants." *Id.* There is an exception allowing for aggregation where claims "have a

'common and undivided interest' in a 'single title or right.'" *Id.* at 718 (*quoting Snyder v. Harris*, 394 U.S. 332, 335 (1969)).

We find that plaintiff cannot fall within this exception and therefore must meet the $75,000 amount for both sets of defendants. Plaintiff has made clear that her claims in the two cases, although both arising from the initial flash flood, are nonetheless different. The parking lot defendants are accused of negligence, and the damages attributable to them occurred on the morning of July 24th when the truck became submerged and when plaintiff was forced to miss her flight. The tow defendants are accused of intentionally stealing her personal items the next day when they towed the truck. Plaintiff has been careful to point out that she believes that her personal items were securely fastened inside the truck and were not lost initially when the truck was submerged. Plaintiff further has made clear that she currently has no basis for believing that the parking lot defendants were involved in the later theft. *See* 5833 Dkt. # 25 at 3.

We next analyze the amount plaintiff estimates is in controversy. In her initial complaints and subsequent briefs, plaintiff provided little specific information, other than stating that she was charged an improper $2,400 towing fee and that she lost personal items and that her truck was damaged. Later in the briefing process, she did submit an affidavit of estimated damages. *See* 5833 Dkt. #29. (She only filed this in one of the two cases.) In this affidavit she describes her damages in more detail and provides an itemized list of out-of-pocket losses. She states that her truck was a Dodge Ram king cab that she bought new in 2006 and used not only to travel to and from O'Hare for her pilot duties, but also used in her other job managing a 235-acre farm in upstate Wisconsin. Because she traveled sometimes at night, she carried extensive emergency equipment, such as flares, tools, medicals supplies, rescue equipment, and even materials to build a temporary shelter next to her truck. She had also customized the truck with a dog ramp for her two dogs and put in a steel barrier inside the truck to protect the dogs in case of an accident. Plaintiff was also a law student at the time. She had a Hewlett Packard laptop computer in the truck, which contained notes for an upcoming law school exam and data about her farm business. Many of these facts were never mentioned or alluded to in the complaints. Here is plaintiff's list of losses:

| | |
|---|---|
| Damage to the 2006 Dodge Ram truck | $34,000 - $45,000 |
| Loss of income from missed United trip | $ 4,201 |
| Emergency equipment | $ 5,000 - $12,000 |
| Farm equipment | $ 6,000 - $9,000 |
| Computers, software, data | $25,000 - $40,000 |
| Law books, outlines, study materials | $ 2,500 - $3,500 |
| Pilot supplies and equipment | $ 5,000 - $8,000 |
| Dog beds, supplies and equipment | $   750 - $1,500 |
| Personal luggage, clothing, supplies | $ 1,200 - $3,800 |

(*Id.* at 4-5.) In addition, plaintiff states that she is seeking $25,000 to $50,000 for "losses of days and weeks of my time, as I worked to rebuild my life, replace my damaged and missing

possessions, pursue my missing Security Sensitive Information (SSI), and resume my professional and personal life." (*Id.* at 5.)

At issue is whether this affidavit provides competent proof to meet the amount in controversy for each case. We conclude that it does not. As an initial matter, several categories of damages are speculative and unconnected to any allegation in the complaints and therefore may not be used to meet the amount in controversy. First, plaintiff refers to $6,000 to $9,000 in losses for farm equipment. It is not clear what this equipment was, as it is not discussed in the affidavit, nor mentioned in either complaint. Was this equipment inside or outside the truck? Was it damaged in the flood or stolen by the tow company defendants? We find that these damages are too speculative. *See Modrowski v. Pigatto*, 2010 WL 2610656, *2 (N.D. Ill. June 25, 2010) ("Plaintiff alleges that he suffered more than $5,000.00 in damages but does not explain how defendants' access to his personal emails [] caused him such harm. Absent some explanation of his alleged damages, plaintiff has not raised his right to relief on this claim 'above the speculative level," as required by *Twombly*."); *Guaranteed Rate, Inc. v. NHT Law Group, APLC*, 2012 WL 2597930, *4 (N.D. Ill. July 5, 2012) (granting motion to dismiss for lack of jurisdiction because plaintiff's damages claims were too speculative).

Second, plaintiff states that she is seeking to recover $25,000 to $50,000 for her time spent trying to "rebuild [her] life." But she fails to provide a plausible factual explanation for these damages. Although she repeatedly mentions that she is trying to comply with her duty to protect SSI, as noted above, she never connects this allegation to any concrete harm such as loss of her job. She also does not explain how the loss of her personal items led to problems in both her personal and professional life. She does not explain what these problems were, much less provide justification for such a large amount of damages. We find that these damages are therefore too speculative. *See Scott v. Bender*, 893 F.Supp.2d 963, 974 (N.D. Ill. 2012) ("these allegations are vague generalizations that do not rise to the level of competent proof required to meet the statutory amount in controversy requirement necessary to invoke the [diversity] jurisdiction of this Court").

The next problem with plaintiff's affidavit is that it does not apportion the remaining damages *between* the two separate cases. As noted above, she must meet the $75,000 threshold for *both* cases. Although plaintiff has not yet attempted to divide her damages claims between the two cases, the complaints suggest that the only damages attributable to the parking lot defendants are the damage to the truck from being submerged and from plaintiff breaking through the steel barrier and the damage from missing the flight later that same day. The remaining damages all relate to the personal items she claims were stolen from the truck the next day. Based on this apportionment and excluding the two categories of damages discussed above, plaintiff's damages would not reach the $75,000 level in either case. Specifically, in 12-5833, her damages would be $49,201 ( the damage to the truck and the missed flight income). In 12-5831, her damages would be $64,700 (emergency equipment, computer, law books, pilot supplies, dog equipment, luggage, and towing fee). This calculation gives plaintiff a generous benefit of the doubt by taking the high end of her estimates, some of which the defendants may later want to question if plaintiff decides to continue pursuing her claims in federal court. For

example, plaintiff is seeking up to $45,000 for damage to her truck, even though it was bought in 2006 and even though plaintiff got the truck back. Similarly, plaintiff believes she should get $25,000 for her stolen laptop. It is not clear how plaintiff arrived at what seems like a high figure for a laptop even if you add in some time for restoring data. The $12,000 she seeks for emergency equipment also seems on the high end, although we reserve judgment on this question to give plaintiff a chance to provide more detailed evidence.

In sum, we grant the motions to dismiss in each case, and dismiss both complaints. The dismissals, however, will be without prejudice because we will give plaintiff three weeks from the date of this order to file an amended complaint in each case. Plaintiff should also file a supporting memorandum explaining why she believes she has met her jurisdictional burden. Defendants then will have two weeks to file a response brief; and plaintiff will have two weeks to file a reply. At that point, we can evaluate whether a jurisdictional hearing before the magistrate judge would be required. Plaintiff should evaluate whether her resources would be better utilized by taking her claims to state court.

**ENTER:**

_____
**JOHN A. NORDBERG
Senior United States District Court Judge**

**DATED:** October 9, 2013