UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOMA GETTY PRIDDLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-cv-5831 |
| ) | |
| DEAN MALANIS, and ) | Judge John W. Darrah |
| GREAT LAKES SERVICE II, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| SOMA GETTY PRIDDLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-cv-5833 |
| ) | |
| DARWIN ASSET MANAGEMENT; ) | Judge John W. Darrah |
| THOMAS DRIVE PARTNERSHIP; and ) | |
| owner of record of 705-715 THOMAS ) | |
| DRIVE, BENSENVILLE, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Soma Getty Priddle ("Priddle"), filed two Amended Complaints on July 17, 2014. The first, against Defendant Darwin Asset Management ("Darwin"), Thomas Drive Partnership, and the owner of record of 705-715 Thomas Drive, Bensenville, Illinois, alleges one count of premises liability, one count of conspiracy to violate Illinois tow law, and one count of violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT § 505/1 *et seq*. The second, against Dean Malanis ("Malanis") and Great Lakes Service II, Inc. ("Great Lakes"), alleges one count each of "Violation of Illinois Tow Law" and replevin. Malanis and Great Lakes challenged Plaintiff's Amended Complaints, pursuant to Federal Rule of Civil Procedure 12(b)(1), which Darwin has joined. The matter has

been fully briefed. For the following reasons, Plaintiff's Amended Complaints are dismissed for lack of jurisdiction.

## BACKGROUND

The following is taken from the Complaints, which are assumed to be true for the purposes of a motion to dismiss. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010).

Plaintiff lives on a farm in Norwalk, Wisconsin, but works as an airline pilot at O'Hare Airport. (12-cv-5831 Dkt. 128, ¶¶ 1, 10.) Plaintiff was driving to work at O'Hare Airport at approximately 5:30 a.m. on July 24, 2010. (*Id.* at ¶ 11.) That morning there were heavy rains and areas of localized flash flooding. (*Id.* at ¶ 12.) Due to a police barricade on Thomas Drive, Plaintiff was directed into Darwin's parking lot in order to turn around. (*Id.* at ¶ 19.) While stopped in the parking lot, a surge of water swept Plaintiff's vehicle into a drainage canal. (*Id.* at ¶ 21.) The items in Plaintiff's vehicle, a Dodge Ram truck, included: farm equipment, emergency equipment, personal supplies, pet supplies, law school materials, and materials containing Security Sensitive Information. (*Id.* at ¶¶ 24, 26-27). Plaintiff managed to escape the vehicle but could still see her belongings in the vehicle after it was carried some distance. (*Id.* at ¶¶ 28, 29.) Plaintiff attempted to retrieve her belongings that day, but she was informed the water was still too dangerous and told to return after at least twenty-four hours. (*Id.* at ¶ 32.)

Plaintiff came back to retrieve her vehicle the next day, but she could not find it and reported the truck as missing. (*Id.* at ¶¶ 35, 37.) The Bensenville Police Department located Plaintiff's vehicle in the possession of Malanis. (*Id.* at ¶ 37.) Malanis refused to return

2

Plaintiff's truck that day. (*Id.* at ¶¶ 38-39.) On July 26, 2014, Plaintiff went to Malanis's lot and saw that most of the contents within the vehicle were missing. (*Id.* at ¶ 45.) Malanis denied any knowledge of how the items in the truck went missing. (*Id.* at ¶¶ 47-49.) Malanis then asked Plaintiff for $2,400.00 to release her vehicle but, after Plaintiff had paid, refused to release the vehicle until the next day. (*Id.* at ¶¶ 50, 53-54, 56.) Malanis finally released Plaintiff's vehicle on July 27, 2014, after demanding an additional $150.00 in cash. (*Id.* at ¶ 60.)

When asked by Bensenville Police who authorized the tow of Priddle's vehicle, Malanis initially stated that he could not remember. (*Id.* at ¶ 61.) After further investigation, Malanis told police that he was authorized by a person named "George" at an address near the final location of Plaintiff's vehicle. (*Id.* at ¶ 62.) But the address did not correspond to a building, and no one was named "George" at the nearby building. (*Id.*)

## LEGAL STANDARD

Federal district courts have original jurisdiction of civil cases where the amount in controversy exceeds $75,000.00 and is between citizens of two different states. 28 U.S.C. § 1332(a)(1). The party asserting federal jurisdiction has the burden of proving jurisdiction is proper. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 289 U.S. 178, 189 (1936)). Citizenship and the amount in controversy must be shown by a preponderance of the evidence. *Lewis v. Weiss*, 631 F.Supp.2d 1063, 1065 (N.D. Ill. 2009) (citing *Meridian Ins. Sec. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

When a party moves to dismiss based on lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court must accept all well-pleaded facts within the complaint as true but may also consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). When the amount in controversy is challenged, a plaintiff is required to support her jurisdictional assertion with competent proof. *McMillan v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (quotations and citations omitted). Such proof requires more than "point[ing] to the theoretical availability of certain categories of proof." *Id.* (citations omitted).

"A document filed *pro s*e is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted).[1]

## ANALYSIS

The cases at issue have been the subject of several revisions to both Complaints based on jurisdictional issues. The Honorable John A. Nordberg dismissed the original complaints for lack of jurisdiction because Plaintiff "fail[ed] to provide a plausible factual explanation for [her] damages." (12-cv-5831 Dkt. No. 59 at 6.) The complaints were dismissed without prejudice, and Plaintiff was allowed to file Amended Complaints along with "supporting memorandum explaining why she believes she has met her jurisdictional burden." (*Id*. at 7.) Plaintiff timely

---

[1] As has been noted before, while Plaintiff is proceeding *pro se*, she holds a J.D. from John Marshall Law School and has been admitted to the Bar in Wisconsin.

filed Amended Complaints, but those too were dismissed for failing to provide competent proof necessary to assert proper jurisdiction. (12-cv-5831 Dkt. No. 126 at 5.) This Court held it unlikely that competent proof exists to justify the hourly rate that Plaintiff uses as the basis for damages based on "rebuilding" her life. (*Id.* at 7.) Plaintiff then filed two more Amended Complaints and a document titled "Plaintiff's Proof of Damages: Explanation & Notes." As an initial matter, Defendants claim that the spreadsheet previously filed by Plaintiff as a breakdown of her damages was stricken and cannot be relied on. This is incorrect; courts may consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers*, 536 F.3d at 656-57.

In her previous jurisdictional memorandum, Plaintiff claimed from Malanis $41,518.59 in "compensatory damages" and $75,283.38 in "compensation for her costs to rebuild her life." (12-cv-5831 Dkt. No. 65 at 3.) Additionally, she claimed from Malanis $83,037.18 in "punitive damages on a 1:1 ratio." (*Id.*) From Darwin, Priddle claims "damages, excluding the cost of rebuilding her life . . . in the amount of $61,239.11" and a "total cost, including the rebuild . . . [of] $72,851.31." (*Id.*)

As previously held, with respect to Malanis and Great Lakes, Priddle's allegations of violations of "Illinois Tow Law" and replevin do not admit the availability of punitive damages. Illinois law disfavors punitive damages; and a plaintiff must establish "gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Id.* (quoting *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996)). However, the section of the Illinois Commercial Safety Towing Act that makes non-compliance with the

5

statute an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILL. COMP. STAT. 505/1, *et seq.*, has recently been held as pre-empted by federal law. *Prof'l Towing & Recovery Operators of Illinois v. Box*, 965 F. Supp. 2d 981, 1005-06 (N.D. Ill. 2013) ("the reference to ICFA appears to be pure consumer protection . . . [and as] a consumer-protection measure related to a property-transportation service of a motor carrier that is not genuinely responsive to safety concerns, it is preempted by federal law.") This makes punitive damages unavailable to Plaintiff.

One of Plaintiff's claimed basis of damages is potential risks from Malanis's possession of Sensitive Security Information, as defined by federal regulations. See 49 C.F.R. § 1520.5 (2009). Federal regulations provide: "When a covered person becomes aware that SSI has been released to unauthorized persons, the covered person must promptly inform TSA or the applicable DOT or DHS component or agency." 49 C.F.R. § 1520.9 (2004). Plaintiff has clearly already met her obligations under the regulation by informing the Bensenville Police, the Illinois State Police, the O'Hare Aviation Police, the airline, and the Department of Homeland Security. Plaintiff also claims other, costly duties and obligations but never actually states what they are. Damages from a "catastrophic event" due to the alleged theft of the information are far too speculative for jurisdictional purposes. Similarly, the "Security Situation Evaluation" provided by Plaintiff lists potential costs and damages of $15,000 to $100,000, an $85,000 range. These amounts are wholly speculative, as Plaintiff does not allege that her identity has been stolen or that the Sensitive Security Information was disclosed to anyone, in any way. As several courts have held, plaintiffs do not allege an injury when they allege that identity theft may occur in the

future. *See Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-CV-4787, 2014 WL 7005097, at *3 (N.D. Ill. Dec. 10, 2014).

Plaintiff's request for $200.00 an hour for time spent "rebuilding" her life is likely far too speculative. In her damages spreadsheet, Plaintiff calculates the time spent rebuilding her life and replacing lost items as $33,756.14 and marks all of that as attributable to Malanis. Later, she attributes $33,764.79 to Malanis and $11,612.20 to Darwin as the cost for rebuilding her life, for a total of $45,376.99. Plaintiff still has not fixed or explained this discrepancy. Additionally, while Plaintiff argues in her reply brief that the amount is appropriate because she missed work in order to replace items and perform other tasks related to losing her personal property, she does not make those allegations in the Complaints. Plaintiff misunderstands the Court's previous ruling: It is doubtful that competent proof exists that she would be paid $200.00 an hour to recreate outlines. If Plaintiff missed scheduled work due to Defendants' alleged actions, competent proof may exist for that figure. But, again, Plaintiff does not allege that in her Complaints.

Without punitive damages or compensation for rebuilding her life, Plaintiff does not reach the monetary threshold necessary for federal jurisdiction. It should be noted that Defendants claim Plaintiff should not be allowed to recover for items which were replaced or compensated for by her insurance. Plaintiff correctly argues that the Illinois collateral source rule applies. "Under the collateral source rule, the amount of damages a plaintiff is entitled to in a civil action will not be decreased by the amount of benefits the plaintiff received from a source

wholly independent and collateral to the wrongdoer." *Hillmann v. City of Chicago*, No. 04-CV-6671, 2014 WL 4449824, at *6 (N.D. Ill. Sept. 4, 2014) (quoting *City of Chi. v. Human Rights Comm'n*, 637 N.E.2d 589, 592 (Ill.App.Ct. 1994)). Therefore, any damages from lost items would not be discounted by any insurance proceeds. Nonetheless, these damages are not enough to confer federal jurisdiction.

## CONCLUSION

For the reasons set out above, both of Plaintiff's Amended Complaints [127, 128] are dismissed without prejudice. Priddle may file a third amended complaint in each of these cases, including allegations of specific damages with supporting documentation, within twenty-one days of the date of this Order. If third amended complaints are filed, they will be referred to the magistrate judge for a jurisdictional hearing.

Date:     February 4, 2015                         
JOHN W. DARRAH
United States District Court Judge